**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION**

C.D.,                                          :
                                               :
         Plaintiff,                  :
                                               :
v.                                             :      Case No. 7:24-cv-122-WLS-ALS
                                               :
Commissioner of Social Security,               :
                                               :
         Defendant.                  :
_____

**REPORT AND RECOMMENDATION**

Plaintiff filed this Social Security appeal on November 21, 2024, challenging the Commissioner's final decision denying his disability applications, finding him not disabled within the meaning of the Social Security Act and Regulations. (Doc. 1). Jurisdiction arises under 42 U.S.C. §§ 405(g) and 1383(c). All administrative remedies have been exhausted.

***Legal Standard***

In reviewing the final decision of the Commissioner, the Court must evaluate whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the correct legal standards to the evidence. *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The Commissioner's factual findings are deemed conclusive if supported by substantial evidence, which is defined as more than a scintilla, such that a reasonable person would accept the evidence as adequate to support the conclusion at issue. *Brito v. Comm'r, Soc. Sec. Admin.*, 687 F. App'x 801, 803 (11th Cir. 2017) (first citing *Lewis v. Barnhart*, 285 F.3d 1329, 1330 (11th Cir. 2002); and then quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)); *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991) (citations omitted).

"Even if we find that the evidence preponderates against the [Commissioner's] decision, we must affirm if the decision is supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted). "In contrast, the [Commissioner's] conclusions of law are not presumed valid. The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius*, 936 F.2d at 1145-46 (citations omitted).

Under the Regulations, the Commissioner uses a five-step procedure to determine if a claimant is disabled. *Noble v. Comm'r of Soc. Sec.*, 963 F.3d 1317, 1320 n.2 (11th Cir. 2020); 20 C.F.R. §§ 404.1520(a)(1), 416.920(a)(1). First, the Commissioner determines whether the claimant is working. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is "working and the work [the claimant is] doing is substantial gainful activity," the Commissioner will find that the claimant is not disabled. *Id.* §§ 404.1520(b), 416.920(b). Second, the Commissioner determines the severity of the claimant's impairment or combination of impairments. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). To be considered disabled, a claimant must have a "severe impairment" which is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities[.]" *Id.* §§ 404.1520(c), 416.920(c). Third, the Commissioner determines whether the claimant's severe impairment(s) meets or equals an impairment listed in Appendix 1 to subpart P of Part 404 of the regulations (the "Listing"). *Id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). Fourth, the Commissioner determines whether the claimant's residual functional capacity ("RFC") can meet the physical and mental demands of past work. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Fifth and finally, the Commissioner determines whether the claimant's RFC, age, education, and past work experience prevent the performance of any

other work. *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). In arriving at a decision, the Commissioner must consider the combined effects of all the alleged impairments, without regard to whether each, if considered separately, would be disabling. *Id.* §§ 404.1523(c), 416.923(c).

The claimant "bears the burden at the first four steps," but there is a limited burden shifting at step five. *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1278 (11th Cir. 2020). At step five, the burden shifts to the Commissioner to "show 'the existence of . . . jobs in the national economy which, given the claimant's impairments, the claimant can perform.'" *Id.* at 1279 (alteration in original) (citation omitted). "If the Commissioner makes this showing, 'the burden shifts back to the claimant to prove'" they cannot perform the suggested jobs. *Id.*

### *Administrative Proceedings*

On January 18, 2022, Plaintiff filed an application for Disability Insurance Benefits, and on April 13, 2022, he filed an application for Supplemental Security Income, alleging an initial onset date of January 24, 2020 in both applications. (Tr. 21, 74, 82). The Social Security Administration denied both claims initially and upon reconsideration. (Tr. 21, 81, 89, 100, 110). Plaintiff requested a hearing (Tr. 161) and appeared before an Administrative Law Judge ("ALJ") on May 7, 2024. (Tr. 21, 42). In a hearing decision dated June 20, 2024, the ALJ determined Plaintiff was not disabled. (Tr. 21-35). The Appeals Council granted Plaintiff's request to review the ALJ's decision, and on September 23, 2024, the Appeals Council adopted the ALJ's decision in its entirety except that it modified the ALJ's conclusion regarding an apparent conflict between the testimony of the Vocational Expert ("VE") and the Dictionary of Occupational Titles ("DOT"). (Tr. 4-8). The Appeals Council's adoption of the ALJ's decision as modified became the final

decision of the Commissioner. Plaintiff filed an appeal to this Court on November 21, 2024. (Doc. 1). This matter is ripe for consideration.[1]

***Statement of Facts and Evidence***

The Court briefly summarizes the relevant facts and evidence from the administrative record below. Plaintiff was born on July 29, 1984, and was thirty-five (35) years old as of the initial onset date. (Tr. 33, 245, 247). The ALJ found that Plaintiff had past relevant work experience as a micro-computer support specialist. (Tr. 33). The ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date but noted that Plaintiff had an unsuccessful work attempt as a grocery delivery driver in 2023 and 2024. (Tr. 24). The ALJ determined that Plaintiff suffered from the severe impairment – among others – of left wrist fracture status post open reduction and internal fixation. (Tr. 24). The ALJ found that Plaintiff also suffered from non-severe impairments not relevant to the Court's recommendation. *Id.* The ALJ found that Plaintiff did not have an impairment or combination of impairments that reached the level of severity contemplated in the Listings. (Tr. 24-27).

Considering the entire record, the ALJ determined that Plaintiff had the RFC to perform sedentary[2] work with numerous limitations, and in relevant part, could frequently handle, finger, and feel. (Tr. 27-33). The ALJ determined that Plaintiff was unable to perform his past relevant work. (Tr. 33). However, considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform: addressing clerk, document preparer, and table worker. (Tr. 34).

---

[1] On September 25, 2025, the Court ordered the parties to further brief the effect, if any, of the Appeals Council's amendment to the ALJ's decision. (Doc. 11). The Court notes that the Commissioner's delay in filing his supplemental brief was due to the federal government shutdown in October and November 2025. Thus, the parties timely submitted their briefs. (Docs. 12, 13).

[2] A claimant restricted to sedentary work can lift no more than 10 pounds at a time occasionally. *See* 20 C.F.R. §§ 404.1567(a), 416.967(a).

Ultimately, the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from January 24, 2020, through June 20, 2024, the date of the ALJ's decision. (Tr. 35).

## DISCUSSION

Plaintiff asserts error at the administrative level based on two narrow issues. First, Plaintiff argues that the ALJ failed to reconcile a conflict between the RFC he assessed with the limitations opined by consultative examiner Dr. Chadwick. (Doc. 8-1, at 9-14).[3] Second, Plaintiff contends that the ALJ failed to resolve an apparent conflict between the VE's testimony and the DOT. *Id.* at 14-17. As follows, the Court first finds Plaintiff's second argument lacks merit before finding that Plaintiff's first argument warrants remand to the Commissioner.

### I.      Apparent Conflict Between the VE's Testimony and the DOT

The ALJ stated in his decision that he "determined that the vocational expert's testimony is consistent with the information contained in the [DOT] and work experience." (Tr. 34). However, that is not quite what the VE testified to during Plaintiff's hearing. As the Appeals Council recognized, there was an apparent conflict between the VE's testimony and the DOT relating to the jobs of addresser and document preparer:

> According to the DOT, the addresser job requires addressing by hand or typewriter, envelopes, cards, advertising literature, packages, and similar items for mailing and the document preparer job requires preparing documents, such as brochures, pamphlets, and catalogs, for microfilming, using paper cutter, photocopying machine, rubber stamps, and other work devices. These jobs are now performed differently and thus are in conflict with the DOT. When there is an apparent conflict between vocational expert evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the vocational expert evidence to support a determination or decision about whether the claimant is disabled. The vocational expert further testified that the addresser job in today's economy is done by computer versus a hand-written process and the document

---

[3] The Clerk issued a notice of deficiency when Plaintiff originally filed his brief. (Doc. 7). The basis for the Clerk's notice is unclear. However, as a result, the Court refers to Plaintiff's memorandum in support of his motion for judgment on the pleadings. (Doc. 8-1).

preparer job previously dealt with microfiche but now deals more with a scanning process. These are still SVP 2 jobs that one would be capable of performing. The Appeals Council accepts this testimony as resolving the apparent conflict.

(Tr. 6) (internal citation omitted). "When the Appeals Council grants review, the Appeals Council decision is reviewable as the final decision" of the Commissioner. *Falge v. Apfel*, 150 F.3d 1320, 1322 (11th Cir. 1998) (quoting *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994)).

Here, the Appeals Council granted review and adopted the ALJ's decision entirely, except as the Appeals Council modified the decision to resolve the apparent conflict between the VE's testimony and the DOT. In doing so, because the Appeals Council modification became the final decision of the Commissioner, the Commissioner resolved the apparent conflict that the ALJ failed to resolve by first identifying the apparent conflict and then explaining how the conflict was resolved. *See Perez v. Comm'r, Soc. Sec. Admin.*, No. 24-10770, 2024 WL 5245256, at *5 (11th Cir. Dec. 30, 2024) (citing *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1366 (11th Cir. 2018)) ("Because there was an apparent conflict . . . the ALJ had an affirmative duty to identify [the] discrepancy and then explain how he resolved it."). As the jobs of addresser and document preparer were last updated in the DOT in 1991 – more than thirty-five (35) years ago – the Court finds that the Commissioner adequately resolved the apparent conflict. *See* Dictionary Occupational Titles ("DOT"), 1991 WL 671797 (4th ed. 1991) (Addresser, 209.587-010), 1991 WL 672349 (4th ed. 1991) (Document Preparer, Microfilming, 249.587-018).

## II.     Conflict Between the RFC and Dr. Chadwick's Opinion

Plaintiff contends that the ALJ failed to resolve a conflict between the RFC that he assessed and the opinion of consultative examiner Dr. Chadwick. (Doc. 8-1, at 9-14). The Court agrees and finds that this matter should be remanded to the Commissioner to resolve this conflict.

In relevant part, the ALJ found that Plaintiff had a severe impairment of left wrist fracture status post open reduction and internal fixation. (Doc. 24). This severe impairment is related to a fall that Plaintiff suffered in 2015, which resulted in a wrist fracture being discovered in 2019, at which time Plaintiff had a wrist bone removed, and screws surgically inserted. (Tr. 27). Later, on June 17, 2021, an x-ray demonstrated changes in Plaintiff's left wrist that revealed carpal bone fusion. *Id.* Related to this severe impairment involving Plaintiff's left wrist, the ALJ assessed an RFC for sedentary work that, in relevant part, limited Plaintiff further such that he could frequently handle, finger, and feel. *Id.*

Plaintiff is an Army veteran who – a review of the medical record shows – receives his medical care almost exclusively through the Department of Veterans Affairs ("VA"). (Doc. 8-1, at 2; Tr. 392-808). Due to VA policy, Plaintiff's medical provider at the VA was unable to complete any disability evaluation forms that would demonstrate Plaintiff's physical and functional capacity. (Tr. 808). Plaintiff did, however, submit to two (2) consultative physical examinations. The first was performed by Dr. Chadwick on June 10, 2023. (Tr. 531-40). The second was performed by Dr. Zervos on October 14, 2023. (Tr. 678-84).

Dr. Zervos assessed Plaintiff's left wrist impairment and opined that Plaintiff would have "limited range of motion with flexion and extension of the left wrist but has full range of motion and good strength and dexterity." (Tr. 683). Notably, while Plaintiff had normal active range of motion of 60° in his right wrist dorsiflexion and palmar flexion, he only had 10° in his left dorsiflexion and palmar flexion. (Tr. 681-82). Despite these findings and assessment, Dr. Zervos's medical source statement is silent on limitations related to Plaintiff's left wrist impairment. (Tr. 683-84). In contrast, Dr. Chadwick opined that Plaintiff had "left-sided manipulative

7

limitations on reaching, handling, feeling, grasping, and fingering and [Plaintiff] will be able to perform these occasionally." (Tr. 537).

The rest of the medical record documents that Plaintiff exhibited limited range of motion in his left wrist, but this documentation did not articulate what his specific limitations were.[4] For example, on November 9, 2021, Plaintiff saw an occupational therapist for his left wrist, who noted limitations in Plaintiff's wrist range of motion, and who indicated that Plaintiff should have a consultation to determine if the hardware in Plaintiff's wrist had shifted. (Tr. 422-24). On January 7, 2022, Plaintiff saw a medical provider to obtain a wrist splint. (Tr. 415). The provider instructed Plaintiff to wear it on a twenty-four (24) hour basis, subject to his ability to tolerate the duration. (Tr. 415-16). The provider also noted that Plaintiff had normal digital range of motion in his fingers. (Tr. 416-17). On April 15, 2022, Plaintiff complained of left wrist pain, but the examining doctor did not treat that specific body part, so the doctor planned to refer Plaintiff for a medical consultation. (Tr. 404). Finally, on July 27, 2023, Plaintiff was seen for left wrist pain, with the provider noting that Plaintiff complained of increased wrist pain. (Tr. 736-37).

As noted, the ALJ limited Plaintiff to *frequent* handling, fingering, and feeling. (Tr. 27). Dr. Zervos's opinion was silent as to limitations relating to Plaintiff's wrist, even though Plaintiff's examination demonstrated, and Dr. Zervos assessed, limitations to Plaintiff's wrist range of motion. (Tr. 682-84). Dr. Chadwick was the only medical provider to issue a medical opinion regarding Plaintiff's handling, fingering, and feeling, and he opined that Plaintiff was limited to *occasional* handling, fingering, and feeling. (Tr. 537). In other words, the only medical opinion on this issue in the medical record from a medical provider – Dr. Chadwick – opined that Plaintiff

---

[4] Because of the formatting of the VA medical records, the medical record transcript contains duplicate medical records. The Court only cites to one copy of the medical records.

was limited to *occasional*[5] handling, fingering, and feeling, while the ALJ's RFC stated that Plaintiff could *frequently*[6] handle, finger, and feel. This was error, and the error was not harmless, for the following reasons.

First, there was a conflict between the RFC and Dr. Chadwick's opinion. It is true, as the Commissioner notes, (Doc. 9, at 7), that the ALJ has the responsibility for assessing an RFC, and the ALJ cannot defer to any particular medical opinion. *See* 20 C.F.R. §§ 404.1545(a)(3), 404.1546(c), 416.945(a)(3), 416.946(c). However, Social Security Ruling 96-8p also requires the ALJ to "explain and address any conflicts between the RFC and medical opinions." *Weidlich v. Comm'r of Soc. Sec.*, No. 22-13309, 2023 WL 8015753, at *2 (11th Cir. Nov. 20, 2023) (citing SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996)).

Here, in evaluating Dr. Chadwick's medical opinion, the ALJ stated that Dr. Chadwick's opinion was consistent with the RFC, but that Plaintiff's "limitations are disproportional to the clinical examination findings and treating records since 2020. Therefore, the [ALJ] finds Dr. Chadwick's opinion partially persuasive." (Tr. 32). To the extent that the ALJ intended the statement that the limitations were disproportionate to the record since 2020 to explain and address the conflict between the RFC and Dr. Chadwick's opinion, it is insufficient. *See Delgado v. Comm'r of Soc. Sec.*, No. 20-14234, 2021 WL 4099237, at *5 (11th Cir. Sept. 9, 2021) (observing that the ALJ gave "little weight" to a medical opinion "on the grounds that it is 'not supported by the record'" and holding that the "explanation is not sufficient."). It may be that the medical record does not support Dr. Chadwick's assessed limitations. But because the ALJ did not identify any

---

[5] Occasionally means up to one-third of the time. *See* DOT, 1991 WL 671797 (Addresser, 209.587-010), 1991 WL 672349 (Document Preparer, Microfilming, 249.587-018), 1991 WL 680217 (4th Ed. 1991) (Table Worker, 739.687-182).

[6] Frequently means from one-third up to two-thirds of the time. *See* DOT, 1991 WL 671797 (Addresser, 209.587-010), 1991 WL 672349 (Document Preparer, Microfilming, 249.587-018), 1991 WL 680217 (Table Worker, 739.687-182).

9

specific medical records that were disproportionate to Dr. Chadwick's opinion, it is not clear to the Court which of the few medical records support the ALJ's finding that the limitations in the medical record are disproportionate. As a result, the Court cannot properly evaluate the ALJ's findings in this regard.

Second, the ALJ specifically stated that Dr. Chadwick's limitations were "consistent" with the RFC the ALJ assessed. (Tr. 32). The Court does not take the word "consistent" to imply an exact identity between two phrases. However, the difference between Dr. Chadwick's occasional assessment and the RFC's frequent assessment is crucial. While consistent does not mean identical, if Plaintiff can only occasionally handle, finger, and feel as Dr. Chadwick opined, then as the VE testified, he would be precluded from any job at the sedentary level. When asked by Plaintiff's attorney at the hearing before the ALJ if "we change the frequent handling, fingering, feeling to occasional handling, fingering, and feeling with the left nondominant upper extremity, what impact, if any, would that have[,]" the VE responded that in her opinion, it "would preclude all those jobs at the sedentary level." (Tr. 70-71). When asked if there would be *any* jobs within the hypothetical that assumed a sedentary job level, the VE simply said "No." (Tr. 71).

In this case, given Plaintiff's severe impairment relating to his wrist injury, as well as Plaintiff being assessed for sedentary work, the difference between occasional and frequent handling, fingering, and feeling is larger than it appears at first blush. "Most unskilled sedentary jobs require good use of the hands and fingers for repetitive hand-finger actions." SSR 83-10, 1983 WL 31251, at *5 (Jan. 1, 1983). "'Occasionally' means from very little up to one-third of" an eight-hour workday. *Id.* In contrast, "'[f]requent' means occurring from one-third to two-thirds of the time." *Id.* at *6. Consequently, the difference between frequent and occasional matters a great deal in deciding whether Plaintiff is disabled under the Social Security Act.

Third, there simply was no other medical opinion in the record relating to Plaintiff's limitations regarding his wrist: Dr. Chadwick's consultative opinion was the only opinion to make any assessment of Plaintiff's ability to handle, finger, and feel. Under the amended regulations that apply to Plaintiff's claim, a medical opinion is now defined as a statement from a medical source about what a claimant can <u>still do</u> despite their impairment(s) <u>and</u> whether a claimant has one or more impairment-related limitations or restrictions in several regulatorily-defined abilities. 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2). Previously, a medical opinion was a statement from an acceptable medical source that reflected judgments about the nature and severity of a claimant's impairment(s), which included symptoms, diagnosis and prognosis, and what a claimant could still do despite the impairment(s). *See id.* §§ 404.1527(a)(1), 416.927(a)(1). A diagnosis, without more, is no longer considered a medical opinion under the regulations. Because Dr. Chadwick's consultative opinion was the only medical opinion regarding Plaintiff's ability to handle, finger, and feel, the RFC that assessed a different level of ability to perform those manipulations rested on nothing more than the ALJ's review of the sparse medical records related to Plaintiff's wrist limitations, all of which amounted to providers simply noting that Plaintiff had wrist limitations.

Finally, and perhaps most importantly, it appears that the ALJ failed to notice that there was a conflict between the RFC and Dr. Chadwick's opinion. In discussing Dr. Chadwick's opinion, the ALJ failed to state that Dr. Chadwick limited Plaintiff to occasional handling, fingering, and feeling. (Tr. 32). In fact, at no point in the ALJ's RFC assessment – in total – did the ALJ note that Dr. Chadwick assessed any limitations regarding Plaintiff's ability to handle, finger, and feel. (Tr. 27-33). It is possible that the ALJ failed to offer an explanation regarding the conflict between the RFC and Dr. Chadwick's opinion because the ALJ did not notice that there was a difference in limitations between the two assessments.

11

Based on the foregoing, the Court finds the ALJ committed error. Not all errors are harmful, of course. The United States Court of Appeals for the Eleventh Circuit has long embraced the "harmless error" rule in Social Security appeals. *See Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (finding that an ALJ's erroneous statements of fact were harmless). "To the extent that an administrative law judge commits an error, the error is harmless if it did not affect the judge's ultimate determination." *Hunter v. Comm'r of Soc. Sec.*, 609 F. App'x 555, 558 (11th Cir. 2015) (citing *Diorio*, 721 F.2d at 728). Here, the Court cannot find that the error was harmless. That is because, as the VE testified, Plaintiff would be precluded from all work at the sedentary level if he was limited to occasional handling, fingering, and feeling. Thus, there was error, and the error is not harmless.

In summary, because the VE testified that a limitation to occasional handling, fingering, and feeling would preclude any job at the sedentary level, this case should be remanded to the Commissioner to resolve the conflict between Dr. Chadwick's opinion and Plaintiff's RFC. In making this finding and recommendation, the Court makes no determination whether Plaintiff is limited to either frequent or occasional handling, fingering, and feeling, or in fact is disabled. *See* 20 C.F.R. §§ 404.1520b(c)(3), 416.920b(c)(3) (noting that the ALJ is "responsible for making the determination or decision about whether" a claimant is disabled). Indeed, Dr. Chadwick's opinion is not binding on the ALJ. *See id.* §§ 404.1520c(a), 416.920c(a) (stating that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . including those from" a claimant's medical sources). Neither does the Court determine whether Dr. Chadwick's opinion is persuasive or not. The ALJ is free to make that determination. *See id.* §§ 404.1520c(b), 416.920c(b) (noting that the ALJ "will articulate . . . how persuasive" medical opinions are). The Court only finds that the ALJ failed to identify and to

12

explain the conflict between the assessed RFC and Dr. Chadwick's consultative opinion regarding Plaintiff's manipulative limitations. Accordingly, the Court finds that the Commissioner's decision is not supported by substantial evidence.

## CONCLUSION

As the Commissioner's decision that Plaintiff was not disabled is not supported by substantial evidence, it is **RECOMMENDED** that the Commissioner's decision be **REVERSED and REMANDED** pursuant to Sentence Four of § 405(g). Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation, or seek an extension of time to file objections, WITHIN FOURTEEN (14) DAYS after being served with a copy thereof. The district judge shall make a de novo determination as to those portions of this Recommendation to which objection is made; all other portions of this Recommendation may be reviewed by the district judge for clear error. Any objection is limited in length to TWENTY (20) PAGES. *See* M.D. GA. L.R. 7.4.

The parties are hereby notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

**SO RECOMMENDED**, this 27th day of January, 2026.

s/ **ALFREDA L. SHEPPARD**
UNITED STATES MAGISTRATE JUDGE

13